**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | **Criminal No.  05-33 Erie** |
| | ) | |
| **JOHN DOUGLAS GRAPE** | ) | |

**OPINION ON COMPETENCY**

This matter comes before the Court for consideration of the issue of Defendant John

Douglas Grape's competency to stand trial.   The Court held a competency hearing on January

20, 2010.   Entered into evidence at that hearing was the Forensic Report dated August 31,

2009, that concluded, in part, that Mr. Grape is presently not competent.

I now conclude that Mr. Grape is presently suffering from a mental disease or defect

rendering him mentally incompetent to the extent that he is unable to assist properly in his

defense.  I am not convinced that under the present circumstances it is likely that Mr. Grape

will be restored to competency and that he will remain competent long enough to be tried.

Nonetheless, I believe that all things considered it is worthwhile to attempt, one last time, to

determine whether there is a substantial probability that in the foreseeable future he will attain

the capacity to permit the trial to proceed.   Therefore, pursuant to 18 U.S.C. § 4241(d), I will

order that Mr. Grape be committed to the custody of the Attorney General for treatment in a

suitable facility.

**I.**

Mr. Grape was originally indicted on July 12, 2005, by a federal grand jury in Erie,

Pennsylvania.  On August 12, 2008, the grand jury returned a superseding indictment

charging Mr. Grape with one count of receipt and distribution and attempted receipt and distribution of material depicting the sexual exploitation of a minor in violation of 18 U.S.C. §§ 2252(a)(2) and 2252(b)(1), and one count of possession and attempted possession of material depicting the sexual exploitation of a minor in violation of 18 U.S.C. §§ 2252(a)(4)(B) and 2252(b)(2).

Within two months after the July 2005 indictment, Mr. Grape's counsel filed a motion for a competency hearing for an evaluation to determine if Mr. Grape is competent to stand trial. Mr. Grape's first competency evaluation, held at the Metropolitan Correctional Center in New York, resulted in "no opinion" on competency in a January 2006 report. We then ordered another evaluation, which was held at the Metropolitan Correctional Center in Chicago, Illinois. A report dated June 23, 2006, again was unable to provide an opinion as to competency. Following that report I held a competency hearing for Mr. Grape on July 20, 2006, at which time I found by a preponderance of the evidence that Mr. Grape was not competent to proceed to trial and he was remanded, pursuant to section 4121(d), to the Medical Center for Federal Prisoners in Springfield, Missouri "to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the trial to proceed." Mr. Grape arrived at the Springfield facility on September 7, 2006.

Mr. Grape was diagnosed as suffering from paranoid schizophrenia. Mr. Grape's treating psychologist, Dr. Christina Pietz, and his consulting psychiatrist, Dr. James Wolfson, informed the Court that they believed Mr. Grape could only be made competent with the assistance of medication, but that Mr. Grape was refusing to take medication. Accordingly, the Bureau of Prisons requested a hearing pursuant to Sell v. United States, 539 U.S. 166

2

(2003), so that this Court could determine whether or not Mr. Grape should be subjected to forcible medication to restore him to competency.

We conducted a <u>Sell</u> hearing on June 26, 2007, after which we entered an order allowing the Bureau of Prisons to forcibly medicate Mr. Grape to return him to competency. The Court stayed that order pending appeal. In the meantime, the Bureau of Prisons determined that Mr. Grape had become a danger to himself or others, allowing forcible medication pursuant to <u>Washington v. Harper</u>, 494 U.S. 210, 221 (1990). When staff confronted Mr. Grape with the fact that he was going to be forcibly medicated if he did not voluntarily submit to medication Mr. Grape agreed to voluntarily take the medication prescribed by the Bureau of Prisons.

By letter dated April 2, 2008, the Warden of the Medical Center in Springfield informed the Court that in the opinion of the clinical staff that Mr. Grape had recovered to such an extent that he is able to understand the nature and consequences of the proceedings against him and to assist properly in his defense, and is therefore mentally competent to stand trial. Pursuant to 18 U.S.C. § 4241(e), a Certificate of Competency attesting to defendant's restored mental condition signed by the Warden of the Medical Center on April 2, 2008, was also forwarded to the Court. On May 7, 2008, following a competency hearing, the Court found Mr. Grape had been restored to competency.

Shortly after returning to the Erie County Prison, and while the appeal of the Court's order allowing forcible medication was pending, Mr. Grape stopped taking his medication. On June 29, 2009, Mr. Grape's counsel sought another psychological evaluation. Given that we had previously found that Mr. Grape suffers from paranoid schizophrenia, that he is only

3

competent when medicated, and that Mr. Grape has been unmedicated, the Court agreed that another evaluation was necessary.

## II.

Mr. Grape was again sent to Springfield for an evaluation. On September 14, 2009, the Court received a Forensic Report, dated August 31, 2009. Dr. Pietz, who prepared the report, opined that Mr. Grape suffers from paranoid schizophrenia and is presently not competent to proceed. She noted that Mr. Grape was not currently taking medication, that he had responded to medication during his previous stay at Springfield, and that he may need to be involuntarily medicated to restore him to competency.

### A.

Dr. Pietz' review of Mr. Grape's records, set forth in the Forensic Report, suggests that he has suffered from a mental illness since 1993. She notes that he was not given a diagnosis suggesting the presence of a psychotic disorder until January 2000. At that time, it was reported that Mr. Grape had no insight into his disorder, he was unstable, uncooperative and a chronic problem for staff at State Correctional Institution at Mercer, where he had been incarcerated on state charges. By April 2000, it was noted that he was not compliant with his medication, and in June 2000 he was transferred to a state Mental Health Unit at SCI-Cresson due to his threatening staff at Mercer. (Forensic Report, dated August 31, 2009, at 4.)

At Cresson during the initial interview, Mr. Grape threatened to break the evaluator's fingers. The evaluator noted that Mr. Grape "had limited insight into his illness," was paranoid, and thought disordered. (Id. at 5.) In 2003, he again refused medication and exhibited characteristics consistent with Paranoid Schizophrenia. (Id.) He was again

4

noncompliant with medication in April 2003, decompensated, and was described as psychotic. (Id.)

A May 2003 psychological evaluation noted that Mr. Grape "displayed gradual decompensation because of being noncompliant with medications," was "agitated, paranoid, and hostile," lacked judgment, and was hostile. (Id. at 6.) Mr. Grape again refused to take medication, and it was noted that his "insight into his own psychological functioning and need for treatment was limited."

In September 2003, it was reported that Mr. Grape again refused to take prescribed antipsychotic medication. (Id. ) At the time, the evaluator noted that Mr. Grape was experiencing delusional thoughts and magical thinking, and accused staff of controlling his thinking, as well as denying his need for medication. (Id.)

## B.

As noted, Mr. Grape first arrived at Springfield in September 2006. In November 2006, Dr. Pietz first approached Mr. Grape about taking medication for his mental illness. At that time Mr. Grape became verbally hostile, used vulgar language, and his speech became disorganized and irrational. Shortly thereafter, the Springfield staff requested the Sell hearing.

While awaiting the Sell hearing and the Court's opinion, Dr. Pietz reported that Mr. Grape began to verbally threaten Dr. Pietz and therefore he was placed in a locked unit. He presented as paranoid and informed staff several times that he intended to kill Dr. Pietz. Over the ensuing months his condition continued to worsen. He continued to threaten Dr. Pietz and wrote a letter to the Court threatening me. In March 2007, during the Harper hearing to

5

determine if Mr. Grape could be medicated on an emergency basis, his thoughts were disorganized and irrational.

On October 25, 2007, Mr. Grape assaulted a correctional officer by throwing hot coffee on him and again threatened Dr. Pietz. At that point, Mr. Grape was involuntarily medicated.

## C.

In contrast to Mr. Grape's mental status when he is not medicated, the April 1, 2008 Forensic Report shows a remarkable difference when he is medicated. Within a month of receiving the medication, Mr. Grape was less threatening, less paranoid, and more cooperative with staff. (Forensic Report, April 1, 2008, at 3.) He was able to engage in meaningful conversations without delusional thoughts. (Id. at 3-4.) By January 2008, he was voluntarily taking his medication and "engaged in rational conversations with the treating psychiatrist about treatment options for him." (Id. at 4.) He began attending a "competency restoration group" where he had "no difficulty answering most questions posed to him about different courtroom scenarios." (Id.)

In finding Mr. Grape competent to proceed, Dr. Pietz noted in her April 1, 2008 Forensic Report that Mr. Grape was aware of the charges against him, as well as the date, time, and location of the alleged offense. (Id. at 9.) He understood the possible penalty, correctly identified his attorney, understood the roles of courtroom participants, understood appropriate courtroom behavior, and understood his potential possible pleas. (Id. at 9-10.) Dr. Pietz concluded that although Mr. Grape suffers from paranoid schizophrenia, his condition is controlled with medication and he is competent to proceed. (Id. at 11.) However,

she also warned "that should Mr. Grape's medication be changed or discontinued for any reason, in all likelihood he will quickly decompensate and not be competent to proceed." (Id.) She recommended that he remain on his current medication and "that it not be changed in any way." (Id.)

### D.

As noted, a competent Mr. Grape was returned to Erie County Prison where he eventually ceased taking his medications and decompensated. Upon his return to Springfield Dr. Pietz unsurprisingly determined that he was no longer competent to proceed. Again, the contrast in Mr. Grape's condition from when he was medicated to when he is not medicated is dramatic. Dr. Pietz began the evaluation with the usual caveats by informing Mr. Grape that "information obtained during the evaluation would not be kept confidential" and that a report would be prepared and distributed. Mr. Grape's response following this explanation indicated he "did not understand the conditions of this evaluation." (Forensic Report, August 31, 2009, at 1.) Dr. Pietz reported that

> [d]uring the initial interview, Mr. Grape made several comments suggesting the presence of a mental illness. His thoughts were disorganized, tangential, and evidenced paranoia. He denied currently suffering from a mental illness and would not consider taking medication. Because of his paranoia and disorganized behavior, he was maintained on a locked unit during this entire evaluation. . . . It was difficult to maintain a meaningful conversation with him because of his mental illness.

(Id. at 2.) In addition, Dr. Pietz noted that during interviews "Mr. Grape appeared quite distressed," and "appeared to be experiencing hallucinations" but denied that he was. Dr. Pietz further indicated that Mr. Grape "exhibited disorganized thinking," and "paranoid thought processes," that were "illogical, disorganized, and tangential." (Id. at 3.)

7

Dr. Pietz also reported that Mr. Grape "was never able to provide a rational description of the charge against him" and "was never able to explain possible consequences if found guilty of his current charges." (Id. at 8.)   She noted that he "denied having an attorney" and added, 'I've never been represented in court. . . . .'" (Id.) He was never able to describe the roles of other courtroom participants, provided an irrational response regarding possible pleas, and "never seemed to comprehend that he could be incarcerated for his current charge." (Id.)

Thus, it appears that without taking medication Mr. Grape has reverted to the state he was in before he was medicated, or perhaps he is even worse.   We note that during the Sell hearing Dr. Pietz testified that Mr. Grape's condition had gotten considerably worse since he had been at Springfield, and both Dr. Pietz and Dr. Robert Sarrazin (the Chief of Psychiatry at Springfield) testified that Mr. Grape's condition would continue to deteriorate without medication.   The August 31, 2009 Forensic Report appears to show that he has deteriorated.

### III.

For unknown reasons after the August 31, 2009 Forensic Report was submitted Mr. Grape was sent back to Erie County Prison -- unmedicated and considered not competent -- even though the Court had not ordered his discharge pursuant to section 4241(e).   As noted, we agree with Dr. Pietz that Mr. Grape is currently not competent to proceed, and therefore we must commit him to the custody of the Attorney General for hospitalization.   While Dr. Pietz notes that Mr. Grape responded to medication during his previous stay at Springfield and likely would respond positively again, she did not specifically recommend to the Court that we commit Mr. Grape for a period of restoration.

8

Understandably, the government requests that we hospitalize Mr. Grape for a period of time in order to determine if he will be able to attain the capacity to permit a trial to proceed. As we have commented before, "the offenses charged against Mr. Grape are serious and [] the government's interest in prosecuting him is important."   (Opinion, September 6, 2007, Doc. 79, at 16.)  However, we are not convinced that a trial against a competent Mr. Grape will be able to begin before he decompensates and becomes incompetent.

If Mr. Grape is sent back to Springfield, and he is again medicated and restored to competency he will again be sent back to Erie County Prison where, if history is any guide, he will cease taking his medication and again decompensate before a trial can begin.  Mr. Grape only seems to be able to be restored to competency in the specialized facility at Springfield, which means that a trial must be conducted within a rather narrow time frame after he is returned to Erie County Prison before the cycle resumes.  The government has suggested that we intervene by using our powers to order that Mr. Grape remain medicated while at Erie County Prison.  Under the circumstances here, this does not appear to be a particularly viable solution.  The Erie County Prison is not a specialized mental health facility, and Mr. Grape has a longstanding history of refusing to take his medication.  Mr. Grape has been to three separate federal medical centers and has confounded the staff at each location.

Under these circumstances I am going to order that Mr. Grape be hospitalized to determine if he can be restored to competency and whether he will attain the capacity to permit the trial to proceed.  This will be the last time I commit Mr. Grape for a period of restoration.  In order to ensure the best possible circumstances for conducting a trial in this matter I am also going to order the Attorney General and the staff at the medical facility

9

where Mr. Grape is placed to maintain custody of Mr. Grape until he is formally discharged by Order of Court pursuant to 18 U.S.C. § 4241(e).

Pursuant to section 4241 the Court shall hold a hearing after the director of the medical facility certifies that Mr. Grape is competent. The history of this case has been that Mr. Grape is shipped back to Erie when the medical staff has completed the psychological evaluation. This is contrary to the relevant statute. Section 4241 specifically states that it is the Court that shall order a defendant's discharge from a medical facility, and that the discharge occurs only *after* the Court holds a hearing and determines that the Defendant is competent for trial. This statute plainly means that Mr. Grape shall stay at the medical facility until after this Court determines whether he is competent to proceed. As we did during the Sell hearing, we will conduct the competency hearing by video-teleconferencing in order to maintain a stable treatment environment for Mr. Grape. It is especially important that Mr. Grape remain at the medical facility as long as possible before any trial in order to ensure that Mr. Grape remains compliant with his medication.

In addition, if Mr. Grape is found not competent, it is imperative that he remain at the medical facility so that he can be treated and evaluated for possible civil commitment pursuant to 18 U.S.C. §§ 4246(a) and (b).

## IV.

When we first conducted the Sell hearing we had no evidence either as to whether medication would restore Mr. Grape to competency or to what extent Mr. Grape would suffer serious side effects from the medication. We now know that Mr. Grape responded positively to medication.

10

If Mr. Grape again refused to take medication, we are uncertain whether another <u>Sell</u> hearing would be necessary. On the one hand, we have already held a hearing and found that the government met its burden to involuntarily medicate Mr. Grape. In addition, we now know that medication is likely to restore Mr. Grape to competency. On the other hand, Dr. Pietz stated in her Forensic Report that if Mr. Grape refuses to take his medication, another <u>Sell</u> hearing would be necessary, suggesting that she believes that the passage of time means that a new <u>Sell</u> hearing would be appropriate. In addition, we now know that Mr. Grape does suffer side effects from his medication. Therefore, we would need to determine under the <u>Sell</u> factors if the side effects would "interfere significantly with [Mr. Grape's] ability to assist counsel in conducting a trial defense, thereby rendering the trial unfair." <u>Sell</u>, 539 U.S. at 181.

When asked by the Court, Mr. Grape's counsel stated at the January 20, 2010 competency hearing that Mr. Grape suffers severe side effects:

> As soon as he got back [from Springfield after he regained competence] I visited John at the [Erie County] jail. At that time I believe he had – I don't believe he was receiving the medication at that time, but he was, as a side effect of the medication, was suffering what I would describe to the Court as severe tardive dyskinesia, involuntary muscle movements, that are sometimes – it's a central side effect of the psychotropic medication, just involuntary jerks, muscle contractions, and that he was – it looked like he was getting shocked every few seconds, just twitching, and having the reaction that I would describe as you've seen somebody get shocked the way they jump or twitch. It was very severe.

(Transcript of Competency Hearing, January 19, 2010, at 8.)

We note also that it is now 4 and 1/2 years since Mr. Grape was indicted. As the Supreme Court stated in <u>Sell</u>, "it may be difficult or impossible to try a defendant who regains competence after years of commitment during which memories may fade and evidence may

11

be lost." Sell, 539 U.S. at 180-181. Finally, Mr. Grape has had numerous psychological evaluations. We have an extensive record regarding his mental health and behavior over many years by different mental health professionals. Significantly, Mr. Grape has now been evaluated over a long period of time by the same doctors in Springfield. This evidence supports a conclusion that Mr. Grape will be civilly committed if he is not able to be restored to competency to allow trial to proceed.

Section 4241(d) of Title 18 of the United States Code states that if "it is determined that the defendant's mental condition has not so improved as to permit the trial to proceed, the defendant is subject to the provisions of section 4246 and 4248." 18 U.S.C. § 4241(d). Section 4246 concerns the hospitalization of a person due for release but who is still suffering from a mental disease or defect, and also applies to those defendants who have not been restored to competency as set forth in section 4241(d). Section 4246 provides for a hearing to determine whether such a defendant "is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person . . . ." 18 U.S.C. § 4246(a).

At the time of the Sell hearing, the only reason that Mr. Grape could not be medicated involuntarily (absent a Court order) was because Mr. Grape was not a danger to himself or others while he was confined. Thus, even at the time of the Sell hearing it seemed substantially likely that the result of any section 4246 hearing would be a finding that Mr. Grape's release would create a substantial risk of injury to other persons. As noted, Mr. Grape's evaluations since that time only lend more support to that conclusion. In particular, in the most recent evaluation Dr. Pietz reiterated her opinion that Mr. Grape is a pedophilia,

who also has paranoid delusions and suffers from schizophrenia. Even assuming that Mr. Grape's condition improves by taking medication it would still appear likely that he would be found to be a substantial risk of bodily injury to another person. He is a pedophilia who spent ten years in prison as a result of a sexual assault on a minor and engaged in similar conduct upon his release. In addition, the medical evidence clearly establishes that unless Mr. Grape is closely monitored under specialized conditions he will cease taking his medication and he will deteriorate again. Thus it appears likely that Mr. Grape would be civilly committed if trial cannot take place.

## V.

We are sending Mr. Grape for yet another evaluation in hopes that he can be restored to competency in order to stand trial for the serious criminal charges he faces. In addition, Mr. Grape filed a notice of insanity defense in this case, and accordingly the government has sought to have him evaluated pursuant to 18 U.S.C. § 4242. For various reasons, however, the evaluators have never been able to render an opinion on this question. Therefore, we will also order, to the extent practicable, that Mr. Grape be evaluated to determine whether at the time of the alleged offenses he was insane and whether he was able to appreciate the nature, quality, and wrongfulness of his actions.

An appropriate Order will be entered.


*Feb. 4, 2010*
Date

*Maurice B. Cohill, Jr.*
Maurice B. Cohill, Jr.
Senior United States District Court Judge

13